■ KOREN ROGERS ASSOCIATES INC., Appellant, v STANDARD MICROSYSTEMS CORPORATION, Respondent. [914 NYS2d 29]—

Judgment, Supreme Court, New York County (Paul G. Feinman, J.), entered September 16, 2009, dismissing the complaint, affirmed, with costs. Appeal from order, same court and Justice, entered August 20, 2009, which denied plaintiff's motion for summary judgment and granted defendant's cross motion for summary judgment dismissing the complaint, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

In May 2006, defendant entered into a contract with plaintiff which provided that plaintiff would conduct a search to fill the position of "Director, Corporate Accounting" at defendant's corporation. The fee and billing structure was based on the estimated starting compensation for the director position, which was $150,000 plus a target bonus of $30,000. The contract also included a term clause stating that the search was expected to be completed within four months of the date of the contract and that in the event it was not, defendant could elect to terminate the contract with three business days' written notice. Defendant interviewed three candidates referred by plaintiff and hired Robert Papa to fill the director, corporate accounting position. Defendant then paid plaintiff the agreed-upon rate of 30% of Papa's starting compensation. Twenty-two months later, in June 2008, defendant hired Christina Catalina, a candidate whose resume plaintiff had sent defendant for the director position opening. Ms. Catalina was hired for an entirely different position of "Senior Director, Corporate Accounting and Assistant Controller," and plaintiff did not refer her for this position. The parties do not dispute that Papa was still working as the director, corporate accounting, when Catalina was hired for the senior director position. Plaintiff now seeks to recover a placement fee for the employment of Catalina.

"[O]n a motion for summary judgment, the construction of an unambiguous contract is a question of law for the court to pass on, and . . . circumstances extrinsic to the agreement or varying interpretations of the contract provisions will not be considered, where . . . the intention of the parties can be gathered from the instrument itself" (*Maysek & Moran v Warburg & Co.*, 284 AD2d 203, 204 [2001] [internal quotation marks and citation omitted] [where the contract was unambiguous and made no mention of additional job titles, plaintiff was only entitled to compensation for its search for a single position]). The contract here is clear and unambiguous, and the intention of the parties can be gathered from the instrument

itself. The contract provided for a placement for the specific position of director, corporate accounting, and did not provide that plaintiff would refer candidates for additional positions, or that defendant would be responsible for paying a fee for any referrals for different positions. Plaintiff performed under the contract by providing defendant with viable candidates, one of whom was hired for the specified position, and defendant, in turn, paid plaintiff the agreed-upon fee. At that point the contract ended.

Indeed, the senior director position was not in existence in 2006 when Catalina was originally interviewed. It was not until January 2008 that defendant found the need to create the new position. Catalina and defendant had sporadically corresponded throughout 2007 and 2008, which, according to defendant, is common among professionals in the accounting field. Furthermore, defendant did not engage plaintiff's services to fill the newly created position. Plaintiff confuses the issue by arguing that Catalina's hiring for the job of senior director, corporate accounting and assistant controller, was covered by the contract. This job title does not appear anywhere in the contract that was sent to defendant.

Although both plaintiff and the dissent point to *Macro Group v Swiss Re Life Co. Am.* (178 Misc 2d 869 [Civ Ct, NY County 1998]) as instructive, the case is distinguishable. In *Macro*, two candidates were referred to the defendant/employer and both candidates were offered positions. Notably, the defendant offered to pay the plaintiff an additional fee in the event the second candidate accepted the offer. Thus, the parties had an agreement for the referral and hiring of the second candidate. Such is not the case here. Defendant never discussed the need to fill the newly created position of senior director with plaintiff. In fact, defendant stated that it relied on its own internal resources in conducting the interview process and ultimate hiring.

The dissent also relies upon *Arrow Empl. Agency v Rice Buick-Pontiac-GMC Truck* (185 Misc 2d 811 [App Term, 2d Dept 2000]) and *Barrister Referrals v Windels, Marx, Davies & Ives* (169 AD2d 622 [1991]), both of which involve different factual scenarios than the one presented here. In *Arrow*, which is not binding on us, the defendant failed to compensate the plaintiff at all under the employment referral contract. In *Barrister*, the defendant failed to compensate the plaintiff, and in fact, terminated the contract prior to making any hires. Moreover, the contract in *Barrister* provided that the plaintiff would receive a finder's commission for bringing a candidate to the defendant's attention. However, here the contract signed by the

parties provided for payment if plaintiff found a candidate for one specific position, within a specific time frame.

Plaintiff's argument that defendant is required to pay a fee for any hire made as a result of plaintiff's sending a resume to defendant could establish an open-ended obligation. Plaintiff could have included provisions in the contract prohibiting defendant from hiring candidates for other positions or requiring defendant to compensate plaintiff for such hiring, but it did not do so, and thus, is not entitled to anything more than it already was paid. Concur—Gonzalez, P.J., Nardelli, Richter and Román, JJ.

Saxe, J., dissents in a memorandum as follows: This appeal requires us to consider whether an employer may be legally obligated to pay a second fee to a placement firm although the parties' contract specifically covers only one position to be filled, where, after one of the placement firm's proposed candidates is hired to fill the opening, the employer later hires, for a second position, another of the candidates originally submitted by the placement firm. In this case, defendant employer ultimately hired *two* of the candidates provided by the placement firm. Yet, the employer disputes the placement firm's claim for an additional fee, relying on the lapse of 22 months before the second hire, the more-senior nature of the second position, and the employer's claim that the follow-up contact was made by the candidate rather than by the employer's consultation of its file of previous candidates. The majority of this Court now holds that *as a matter of law*, the employer may not be held responsible for the placement firm's fee for the second candidate. I respectfully dissent, concluding that issues of fact are presented that preclude summary determination here.

Plaintiff Koren Rogers Associates is an employer-paid executive search firm. By a letter agreement signed May 5, 2006, defendant employer Standard Microsystems Corporation (SMC) retained Koren to find candidates to fill a "Director, Corporate Accounting" position at SMC. SMC agreed to pay Koren "30% of the successful candidate's first year's cash compensation." Although it contains a provision that if Koren could not complete its search within four months, SMC could terminate the agreement on three days' written notice, and receive reimbursement for its out-of-pocket expenses, the contract contained no provision for its automatic termination upon the successful hiring of a candidate and payment of the agency's fee. Nor does it discuss the possibility that the employer might subsequently offer employment to the other candidates submitted by the agency.

Koren referred three candidates for the open position, including Robert Papa, who was already an independent consultant at SMC, and Christina Catalina. After interviews, SMC offered the position to Papa, who accepted the position. SMC's employment record lists Papa's job title as "Senior Manager, Reporting and Consolidation" rather than as "Director, Corporate Accounting," but there was no dispute that Papa was hired for the position contemplated by the contract, and SMC paid the balance due under the contract in September 2006.

In June 2008, SMC hired Christina Catalina as "Senior Director, Corporate Accounting and Assistant Controller" with a starting salary of $200,000. Koren demanded a placement fee pursuant to the parties' agreement, but SMC took the position that the agreement did not cover SMC's subsequent hiring of Catalina for a position not covered by the parties' contract. This action followed.

The motion court granted defendant's cross motion for summary judgment dismissing the complaint, and the majority now affirms, reasoning that the hiring of the second candidate for a different position 22 months later was, as a matter of law, beyond the scope of the agreement.

In my view, factual issues preclude resolution of this dispute as a matter of law. For example, SMC claims that the second position was a newly created job not within its contemplation in 2006, and that its consideration of Catalina for the position in 2008 occurred because she independently maintained contact with the company, rather than because it retained the 2006 candidates' information for possible future hiring. However, while those assertions, if proved, will entitle SMC to dismissal of the action, they are not incontrovertible truths; they must be found to be true, after plaintiff has been given the opportunity to challenge them, before they entitle defendant to judgment in its favor.

Moreover, the fact that the terms of the contract were fulfilled by SMC's hiring of Papa and its payment to Koren of the fee due under the contract does not end all possible claims, where SMC thereafter hired a second of the placement firm's proposed candidates. A similar situation was presented in *Macro Group v Swiss Re Life Co. Am.* (178 Misc 2d 869 [Civ Ct, NY County 1998]). There, the plaintiff employment agency referred two applicants to the employer for the position of assistant comptroller; the employer hired one of the applicants as assistant comptroller. The second candidate was also offered a position, as financial manager and assistant vice-president, which she initially turned down, but after she contacted the employer

directly some months later (on unrelated business), the contact eventually led to her acceptance of the previously offered position, 10 months after she first refused it. The court granted the placement firm a judgment for its fee, rejecting the employer's defenses that (1) it had not asked the placement firm for candidates for the financial manager position; (2) the candidate had been referred for a different position, and not been hired for that position; and (3) her eventual hiring was unrelated to the original referral, having come about solely through subsequent contact initiated by the applicant herself (*id.* at 871-872).

Regarding the argument that the candidate herself made the subsequent contact, the court in *Macro* observed that "but for plaintiff's referral of the applicant the defendant would not have come into contact with the applicant" (*id.* at 872). The same reasoning invalidates SMC's argument that Koren's claim must be dismissed because it was Catalina who later reached out to SMC after she was initially rejected as a job candidate proposed by Koren. As Appellate Term explained in *Arrow Empl. Agency v Rice Buick-Pontiac-GMC Truck* (185 Misc 2d 811, 812 [App Term, 2d Dept 2000]), "even if [the candidate] was hired after she contacted defendant, this occurred subsequent to the initial interview with defendant which took place as a result of the original referral by plaintiff, and cannot constitute an attenuating circumstances absolving defendant of its liability." The same basic scenario was presented in *Smith's Fifth Ave. Agency, Inc. v Airwick Indus., Inc.* (1989 WL 54105, 1989 US Dist LEXIS 5511 [SD NY 1989]), where the court rejected the employer's defense that no fee was payable because the eventual hiring only occurred after it intially rejected the candidate and terminated the agreement with the placement agency, and it was the candidate who made renewed contact with the employer to inform it of her availability for a downgraded version of the original position.

Nor is it appropriate to dismiss Koren's claim as a matter of law on the ground that the contract automatically expired upon SMC's hiring of Papa, so that the placement firm would never be entitled to a fee for a subsequent hire from the same pool of applicants. Even an explicit termination of such a contract does not cut off the placement firm's right to a fee if the ultimate hiring can be traced back to its initial referral of the employee (*see Barrister Referrals v Windels, Marx, Davies & Ives*, 169 AD2d 622 [1991]). In *Barrister Referrals*, this Court referred for trial the claim by the plaintiff search firm seeking payment of its finder's fee notwithstanding the intervening termination of its contract with the defendant law firm. Although the candidate

initially brought to the law firm's attention by the search firm joined the law firm over two years after the their earlier negotiations were cut off, *after* the parties' agreement was terminated, this Court explained that it was "for the jury to determine whether a connection can be traced between plaintiff's initial introduction of [the subject attorney] to [the law firm] and the termination of the entire transaction some two years later" (*id.* at 623).

I would also reject defendant's assertion that the job title of the position for which Catalina was hired establishes as a matter of law that it was separate and distinct and therefore not covered by the letter of retention. An employer's decision to hire a placement agency's candidate at a lower salary and for a different position than that for which he or she was referred does not defeat the agency's right to recover under an enforceable fee arrangement (*see Arrow Empl. Agency*, 185 Misc 2d at 812; *Robert Half Personnel Agencies v Certified Mgt. Corp.*, 102 Misc 2d 317 [App Term, 1st Dept 1979]). The rule should be no different for a candidate hired at a higher salary, especially when the difference between the position described by the placement agreement and the position for which the second candidate was hired, besides the higher salary, is the addition of the word "Senior" to the job title. To the extent this Court's decision in *Maysek & Moran v Warburg & Co.* (284 AD2d 203 [2001]) seems to indicate that a placement agency is only entitled to its fee when the job for which its candidate was hired exactly matches the level of the job recited in the retainer agreement, it cites no supporting authority, is contrary to the body of case law and legal principles otherwise applicable to the situation, and yet lacks any discussion or acknowledgment of those cases or principles, and I would not follow it.

Koren was retained to find candidates for the position of "Director, Corporate Accounting." The position SMC hired Papa to fill was "Senior Manager, Reporting and Consolidation," while the subsequent position filled was "Senior Director, Corporate Accounting and Assistant Controller." These facts simply do not permit any conclusion as to whether the position for which Catalina was hired was close enough to that contemplated by the parties' agreement as to require SMC to cover Koren's fee for that placement. Nor does SMC's assertion that Papa's position paid $150,000 while Catalina's job paid $200,000.

I do not suggest that an employer's obligation to the placement firm would continue in perpetuity. But, in the absence of contractual provisions clarifying the parties' respective rights and obligations in relation to those proposed candidates who

were not initially hired, the employer who hires a second of the proposed candidates should not be permitted to avoid any liability to pay a fee to the placement firm for that second candidate by relying on the theory that the contract expired upon the completed hiring of one candidate for the single position discussed in the placement contract. Rather, a variety of facts should be considered, including the lapse of time, the nature of the subsequent position, and whether the employer used candidate information it received previously from the placement firm. The facts presented in the present case necessitate fact-finding as to some of these factors, precluding summary judgment.